IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DAVID MAHON, ) | Civil Action No.: 4:06-cv-2251-JFA-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | |
| ) | REPORT AND RECOMMENDATION |
| DOCTOR NFN BENOIR, AND CASE ) | |
| MANAGER NFN BAKER, SUED IN THEIR) | |
| INDIVIDUAL CAPACITIES FOR ) | |
| MONETARY DAMAGES, SUED IN ) | |
| INDIVIDUAL AND OFFICIAL CAPACITY ) | |
| FOR OTHER RELIEF, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, David Mahon ("plaintiff/Mahon"), filed this action under 42 U.S.C. § 1983[1] on August 10, 2006. At all times relevant to the allegations in the plaintiff's complaint, he was incarcerated within the South Carolina Department of Corrections.[2] Plaintiff alleges that his constitutional rights were violated due to medical indifference. On September 10, 2007, defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

[2]Plaintiff was released from prison on March 30, 2007. (See defendants' memorandum, p.1 and plaintiff's notice of change of address dated March 30, 2007.)

4:06-cv-02251-JFA     Date Filed 06/05/08    Entry Number 28     Page 2 of 18

along with a memorandum and exhibits in support of that motion (document #19). Because the plaintiff is proceeding pro se, he was advised on or about September 11, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. The plaintiff filed a response in opposition on November 9, 2007.

## II. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges that his constitutional rights were violated due to a deliberate indifference to his medical needs. Specifically, plaintiff alleges that he was diagnosed with multi-level disc disease and lumbar spine injury with sciatic nerve damage and chronic pain syndrome; that his private doctors prescribed multiple medications, including narcotics, to alleviate the chronic pain; that upon entering the SCDC he had a cast on his right wrist to treat a perforation/tear, that he had an appointment with one of his private doctors on October 10, 2005, to schedule a surgery date for his wrist, that on September 28, 2005, he was placed in a wheelchair at the Kirkland Reception and Evaluation Center, that he produced all of his SCDC records and documentation detailing his past medical condition dating back to 2001. However, plaintiff argues that defendant Dr. Beinor ordered him out of the wheelchair, ordered that the cast on his right wrist be removed, took away his medications, refused to renew the medications prescribed by his private physicians, and refused to allow him to see his private doctor on his scheduled appointment date of October 10, 2005. Plaintiff alleges that he was returned to his cell where he remained for four days in pain, was in and out of consciousness, had convulsions, vomited blood, had a high fever, and was unable to walk to the

2

kitchen to eat. Plaintiff alleges that Dr. Beinor prescribed Librium to treat his withdrawal symptoms and Naprosyn and Baclofen for pain which were the drugs his physicians had discontinued years earlier. Plaintiff further alleges that after being transferred to Lee Correctional Institution, he received disability restrictions but was assigned a top bunk in a cell located up a long flight of stairs, that Caseworker Baker refused to move him to a new cell with a bottom bunk, that the SCDC doctors refused to give him more potent pain mediation, that he was transferred to McCormick Correctional Institution and assigned a top bunk but because of his disability restrictions he was transferred to Manning Correctional Institution. Plaintiff asserts that at Manning Correctional Institution, he was refused x-rays of the spine, but allowed an x-ray of his right wrist that was read as normal. Plaintiff alleges that as a result of the medical indifference, he lost weight, had sleepless nights, suffered a loss of appetite, was not able to enjoy life and experienced unnecessary pain and suffering in his hip, back, legs, and wrist.

Plaintiff requests that the SCDC return his medications and the cast taken from him, and he requests an MRI of his wrist and surgery be performed by a private physician. Plaintiff further requests that the SCDC prescribe the same medications he had prior to being in prison and wants and examination by a private doctor. Additionally, plaintiff seeks actual damages for physical and mental pain and suffering and punitive damages.

As stated above, defendants filed a motion for summary judgment asserting that they are entitled to Eleventh Amendment Immunity, that plaintiff cannot show that the defendants deprived him of any rights or privileges under the constitution or federal law, that there was no deliberate indifference to plaintiff's medical needs, that they are entitled to qualified immunity, and that any claims for mental or emotional injury are precluded by the PLRA. Further, defendants assert that

since plaintiff has been released from prison, his requests for medication, examinations, surgery, x-rays, etc. are now moot.

## B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving

party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C. MEDICAL INDIFFERENCE

As previously discussed, plaintiff alleges that defendants were deliberately indifferent to his medical needs by denying him medications prescribed by outside physicians, not allowing him outside medical visits to his physicians, taking away the cast for his wrist, not prescribing strong pain medication, and not making sure he was placed in a lower bunk.

Defendants submitted the affidavit of Dr. Michael J. Beinor who attests that he is a physician licensed to practice medicine in the State of South Carolina and is employed by the SCDC to provide medical care and treatment to inmates. Beinor attests that after reviewing plaintiff's complaint, he is aware that plaintiff alleges he was deliberately indifferent to his serious medical needs when he refused to prescribe the pain medications he was taking prior to his incarceration, refused to let him wear the cast on his right wrist, made him climb up and down stairs to get to his cell, made him climb up and down from a top bunk, refused to allow him to be examined by a physician of his choice and prevented him from having surgery on his right wrist. Further, Beinor states that he understands plaintiff alleges Caseworker Baker was deliberately indifferent to his serious medical needs when he failed to assign plaintiff to a bottom bunk in a cell on the ground floor as required by his disability restrictions.

Beinor attests that according to plaintiff's SCDC medical records from September 27, 2005,

5

to March 27, 2007, there were 96 encounters. (Beinor attached a copy of the SCDC records to his affidavit). Beinor attests that he first saw plaintiff on September 27, 2005, and noted he was on Methadone and several other medications for neuralgia, but had not received any that day and that plaintiff was shaky. Beinor attests that he prescribed Librium to help with the detoxification and withdrawal symptoms and gave plaintiff a pass for a ground floor bottom bunk.

Further, Beinor attests that he examined plaintiff on September 28, 2005 and plaintiff gave a history of several fractures, several ruptured discs, and nerve damage to his legs, although he was independent with his activities of daily living. Beinor attests that plaintiff came to the medical office in a wheelchair, which he was given when he first arrived at SCDC. However, Beinor asserts that the physical examination revealed that he had good leg strength, reflexes, and range of motion. Beinor attests that during the examination, plaintiff got off of the examining table with ease, including flexing his back. Beinor attests that he ordered Baclofen and Naprosyn for the pain and instructed the nurses to get plaintiff's medical records from his treating neurosurgeon, which were placed in plaintiff's SCDC medical chart.

Beinor attests that plaintiff was transferred to Lee Correctional Institution on October 19, 2005. Beinor asserts that based on a review of the medical records, a doctor examined plaintiff on December 5, 2005, due to his complaints of pain and that the medication was not helping. The doctor ordered an x-ray before ordering a neurosurgery consult but plaintiff refused to have the x-ray of his spine. Beinor attests that plaintiff was transferred to McCormick Correctional Institution on January 30, 2006, and then immediately transferred to Manning Correctional institution on February 6, 2006, where the doctor renewed his medications, and he had a job as a teacher's aide in the prison school area. Beinor attests that a doctor examined plaintiff on May 5, 2006, and reported that the plaintiff

could get on and off the table and chair unassisted. The records noted that plaintiff walked with a slight limp, although the doctor questioned whether the plaintiff was magnifying his signs and symptoms. Beinor attests that the records reflect plaintiff complained of pain in the arms and legs with range of motion and had slight weakness in the lower extremities and good hand grips. Beinor attests that the x-rays were ordered and referred plaintiff to the Orthopedic Clinic but plaintiff refused the back x-ray because he was afraid the SCDC would make a new back diagnosis that he did not have any problems and use it to take away his disability checks from Social Security. The records reflect that plaintiff only wanted an x-ray of his wrist and hand, wanted pain medications, and wanted a cast for his arm.

Beinor attests that on June 13, 2006, plaintiff presented with complaints about chest pain and difficulty breathing for which the doctor transferred plaintiff to Richland Memorial Hospital where he was diagnosed with a viral syndrome and headache. Beinor attests that upon returning to the prison, a doctor examined plaintiff on June 16, 2006, and plaintiff was found to have a steady gait, good hand grip, and good range of motion of all extremities and was allowed to return to work.

Beinor states the records reflect plaintiff was seen in the Orthopedic Clinic on June 19, 2006, and x-rays revealed no wrist fractures. He was not scheduled for any follow-up with the Orthopedic Clinic. On October 9, 2006, plaintiff again complained about back pain and leg pain and numbness. Plaintiff stated the medications for pain did not work and the doctor performed a physical examination and ordered another Orthopaedic consult. Plaintiff signed a release to get his old outside medical records. On November 20, 2006, Beinor attests plaintiff presented to the Orthopaedic Clinic where the doctor diagnosed chronic low back pain consistent with degenerative disc disease without signs of radiculopathy or myelopathy and recommended continued medical management but no

further x-rays or limitations on his activities.

Beinor attests that plaintiff reviewed his medical chart on March 9, 2007, and was released from prison on March 30, 2007. Beinor attests that during his incarceration, plaintiff did not experience any serious or life threatening medical problems and did not suffer any emergent or urgent medical problems relating to his back and/or wrist which required immediate or emergency care. Beinor states plaintiff complained continuously about not receiving narcotics for his pain, however, he was prescribed several non-narcotic medications which the records indicate plaintiff was non-compliant with taking them. Beinor attests that the medical records show that even if plaintiff was in pain, he was able to take care of his activities of daily living without assistance and his back and wrist problems did not keep him from holding a job in the prison. Additionally, Beinor attests that plaintiff refused x-rays of his back, and the x-ray of his wrist did not show any problems that needed to be treated with a cast. Orthopedic surgeons examined his wrist and did not recommend surgery. Beinor attests that the SCDC will allow an inmate outside medical care if he meets ceratin requirements established by policy abut plaintiff never applied for the outside medial care. Beinor attests that although the medical records indicate plaintiff was assigned a bottom bunk, assuming plaintiff did not get one, there is nothing in the medical records to support his claim that he was injured or damaged from having to use a top bunk or having to walk up steps to get to his cell. Beinor attests that based on the records, neither he nor Caseworker Baker acted with deliberate indifference and did not violate any standards of medical/nursing/prison practice in the care and treatment of the plaintiff. (Beinor's affidavit and attached medical records).

In his response to summary judgment, plaintiff argues he suffered chronic pain, loss of use of his right hand and arm "at one point during his incarceration." Plaintiff also asserts he suffered

physical pain in his lower back which "traveled to plaintiff's ankle on his left leg and to his right knee. So plaintiff did suffer physical injury." (Plaintiff's response).

The undersigned finds that the plaintiff fails to show that defendant was deliberately indifferent to his medical needs. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of

10

negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

The plaintiff has failed to show that he was denied medical treatment. As noted from the affidavit and plaintiff's medical records, he was examined on several occasions and provided medication, x-rays, a bottom bunk pass[3], and orthopaedic examinations. Plaintiff refused x-rays of his spine stating he was concerned that they would make a different diagnosis that would cause him to lose his disability. X-rays taken of his wrist were reported as normal. He as examined several times in the Orthopaedic Clinic, and was issued a bottom bunk pass. (See SCDC medical records

---

[3] Based on a review of the records, plaintiff was given a pass for a bottom bunk on September 27, 2005. Plaintiff has not shown that these defendants prevented him from receiving a bottom bunk.

dated 09/27/05). Plaintiff complains he suffered pain in that he did not receive the pain medication he requested and/or the narcotic medication he was on at the time he entered the SCDC. However, he was prescribed medication for his pain. Plaintiff has not presented any medical evidence to show that he suffered any permanent injury as a result of his allegations.

As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Plaintiff has not put forth any allegation or evidence that he received anything other that de minimis injury. Additionally, plaintiff has failed to show that he had a serious medical need of which defendant knew about and consciously ignored. Plaintiff has not shown that any conduct by this defendants "shocks the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v.Sheffer, supra.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff by these defendants. For the above stated reasons, summary judgment should be granted in favor of defendants on this issue.

### D. QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1985).

In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government

13

> officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." The Torchinsky court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." Torchinsky, 942 F. 2d at 261, citing Sevigny v. Dicksey, 846 F. 2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F. 2d at 261, citing Collinson v. Gott, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of Swanson v. Powers, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. Plaintiff fails to show that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

### E. ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's §1983 claims against the defendants for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity. Defendants also argue that the action against the defendants should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as employees of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, are not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the SCDC and, thus, state officials acting in their official capacity while employed by the SCDC. Therefore, they are entitled to Eleventh Amendment immunity from monetary damages.

Further, any requests for injunctive relief are moot in that plaintiff has been released from the SCDC. Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition complained of. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983).

### F.  EMOTIONAL DISTRESS

Plaintiff alleges that he is entitled to receive damages for emotional stress due to the conditions alleged in his complaint. Defendants argue that plaintiff cannot recover damages for emotional stress as physical injuries are a prerequisite for an award of damages for emotional distress under 42 U.S.C. §1983 which plaintiff has not proven. As previously stated, plaintiff argues in his response that he did suffer physical injury as a result of his chronic pain and by the pain traveling throughout parts of his body and lost the use of his entire right hand and arm "at one point during his incarceration." (Response).

Plaintiff cannot recover damages for emotional distress. Case law prior to the Prison Litigation Reform Act had held that there is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish in prison, and hence, there is no liability under § 1983 regarding such claims. See Grand Staff v. City of Borger, 767 F.2d 161 (5th Cir. 1989). The Prison Litigation Reform Act provides that physical injuries are a prerequisite for an award of damages for emotional distress under 42 U. S. C. § 1983. See new 42 U.S.C. § 1997e(e); Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997).  As the plaintiff has not provided evidence of any physical injury as a result of his allegations of medical indifference, he is not entitled to recover for mental anguish or emotional distress under 42 U. S. C. § 1983. Therefore, his claims for emotional

17

distress should be dismissed.

### III. CONCLUSION

Based on the reasons stated above, it is **RECOMMENDED** that the motion filed by the defendants for summary judgment (document #19) be **GRANTED IN ITS ENTIRETY** and that this matter be **DISMISSED** as no constitutional or statutory rights have been violated.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 5, 2008
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**